**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY**

v.

**TRANSIT CASUALTY COMPANY.**

Civ. A. No. 69–1818.

United States District Court,
E. D. Pennsylvania.
July 14, 1972.

Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia Pa., for plaintiff.

Norman Paul Harvey, Harvey, Pennington, Herting & Reneissen, Philadelphia, Pa., for defendant.

MEMORANDUM OPINION

BRODERICK, District Judge.

This matter is before the Court on plaintiff's Motion for Reconsideration of a discovery Order in this action which, pursuant to Rule 34 of the Federal Rules of Civil Procedure, ordered plaintiff to produce for inspection and copying by the defendant certain documents. Plaintiff alleges that eleven of these documents contain advice given to plaintiff by its counsel, which is protected from discovery by the attorney-client privilege.

A brief recital of pertinent facts is helpful at this point. On or about March 1, 1958, the defendant, Transit Casualty Company (hereinafter referred to as Transit), issued to the Philadelphia Transportation Company (hereinafter referred to as PTC), an insurance policy in which Transit undertook to insure PTC against losses resulting from PTC's liability for personal injury and property damage in excess of $50,000.00 per occurrence. All policies of insurance under which PTC was insured and all claims of PTC under those policies were assigned to the defendant, Southeastern Pennsylvania Transportation Authority (hereinafter referred to as SEPTA), which is the successor to PTC.

On or about December 27, 1960, one Ruvenest Davis suffered bodily injury in an accident which she claimed to have been the result of negligence on the part of PTC. She sued PTC in the Court of Common Pleas of Philadelphia County, Pennsylvania. Trial of that action concluded on or about June 18, 1968, with a verdict against PTC in the amount of $300,000.00. Her action was subsequently settled by SEPTA for $150,000.-00. The action at hand was commenced on August 6, 1969 by SEPTA demanding judgment against Transit in the amount of $100,000.00, which is the amount owed to Mrs. Davis in excess of $50,000.00.

The insurance policy in question provides in part that:

### SECTION VI

NOTICE OF OCCURRENCE, CLAIM OR SUIT. The Insured shall give to the Company written notice of any occurrence, which in the judgment of the Insured is likely to involve liability of the Company hereunder, within ten (10) days after knowledge thereof, and shall give like notice within ten (10) days of any claim or suit where the amount claimed or sued for is in excess of the underlying loss stated in the schedule.

### SECTION VII

ADMINISTRATION OF CLAIMS. The Insured, subject to the conditions herein, shall be responsible for the investigation, settlement, or defense of any claim made, or suit brought, or proceeding instituted against the Insured, and shall furnish to the Company all copies of summons and pleadings filed in each suit, and a complete investigation report of each claim or suit which is likely to involve liability of the Company hereunder.

If the Company deems it desirable to employ counsel to represent the Insured and the Company in respect of the amount of any claim in excess of the underlying loss, it shall have the right to do so and shall compensate such counsel. When the amount demanded in settlement is in excess of the underlying loss, the Company shall have the right to discharge its liability on account of such claim or suit by paying to the Insured the difference between the amount demanded ·in settlement and the applicable amount of the underlying loss as stated in the schedule.

If the Insured shall elect not to appeal a judgment exceeding the underlying loss, the Company shall have the right to conduct such an appeal at its own expense, but in no event shall the Company's total liability exceed the limit of indemnity shown on the schedule. Insured shall obtain the consent and approval of Company with respect to settlements in amounts exceeding the underlying loss.

### SECTION IX

INSPECTION. The books and records of the Insured and the books and records of all agents and representatives of the Insured shall be open to the Company and its representatives at all times during usual business hours for inspection of records.

The defendant insurance company has refused payment of the excess amount in the Davis claim, relying on an alleged breach by SEPTA of Sections VI and VII of the insurance contract. Specifically, Transit claims that SEPTA failed to advise Transit of its potential liability in the underlying damage suit and that, while the action on behalf of Mrs. Davis was instituted in January 1962, Transit was not notified of the claim or that the claim could involve amounts greater than $50,000.00, and, therefore, exposure under the aforesaid insurance policy, until approximately one week before the trial of the Davis claim. Transit also alleges that information concerning the Davis case had not previously been made available to it. One of the primary issues, therefore, is whether SEPTA, under the terms of the contract, violated that contract by failing to advise Transit of its exposure until approximately one week prior to trial. Implicit in the consideration of this issue is a determination of whether SEPTA should have been aware of the excess exposure at an earlier date and so advised Transit pursuant to Section VI of the insurance agreement.

On May 4, 1972, upon Motion by the Plaintiff, this Court ordered Transit to produce for inspection and copying the claim and litigation files pertaining to the underlying claim of Mrs. Davis against SEPTA, including all correspondence and writings pertaining either to the claim of Mrs. Davis or to the claim of Mrs. Collins, who was also injured in the same accident as Mrs. Davis. We are now asked by SEPTA to reconsider the entry of our May 4, 1972 Order in connection with the production of documents which the plaintiff received from its attorneys because it is alleged that some of the documents are within the attorney-client privilege. These eleven documents, as set forth in Plaintiff's Rule 34 Response, are all memoranda from: either a staff attorney, a counsel to PTC in the Davis litigation, or an assistant claims attorney for PTC, to: either the general claims attorney or the assistant claims attorney for PTC and all contain information and advice as to steps which should be taken by PTC in the Davis or Collins litigation.

Rule 26(b) (1) of the Federal Rules of Civil Procedure provides for the discovery of any matter which is relevant to the subject matter involved in the pending action if it is not privileged. The attorney-client privilege, which is the oldest privilege recognized by common law,[1] is set forth in a statute of the Commonwealth of Pennsylvania which provides that a counsel is not "competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client."[2] This rule of privileged communications arose in order that a client could safely inform his attorney of all pertinent matters so as to further the administration of justice.[3] Ordinarily, the privilege against testimony at trial also carries over and applies to discovery proceedings.[4] The rule has been narrowly construed and does not apply, for instance, to communications made in the presence of third persons[5] when there is no expectation of confidentiality, nor does the privilege apply when the communication could not injuriously affect the interests of the client.[6]

In the present action, SEPTA claims that the advice given it by its counsel during the litigation between Mrs. Davis

1. *See generally* 8 Wigmore, Evidence § 2290, at 542 (McNaughton rev. 1961).

2. 28 P.S. § 321.

3. *See* Tutson v. Holland, 60 App.D.C. 188, 50 F.2d 338 (1931).

4. 4 Moore's Federal Practice ¶ 26.60 [2], at 26–229 (2d ed. 1971).

5. Machnofsky v. Smith, 101 Pa.Super. 578 (1931).

6. Hamilton v. Neel, 7 Watts 517 (Pa. 1838).

and SEPTA is not discoverable by Transit. Transit, however, argues that any attorney-client privilege which may have existed between SEPTA and its attorneys has been waived by reason of SEPTA's insurance policy with Transit and the institution of this lawsuit. We agree with Transit.

SEPTA in this action is claiming that it is owed payment of an excess award under the terms of the insurance policy. In that same insurance contract, however, SEPTA has agreed that its books and records shall be open to Transit, that SEPTA will furnish to Transit copies of summons, pleadings and a complete investigation report of each suit or claim which is likely to involve liability to Transit, that Transit can employ counsel to represent SEPTA on any claim in excess of $50,000.00, and that Transit can appeal any judgment exceeding the underlying loss. Certainly, had Transit participated in the representation of SEPTA in the Davis case, there would have been an identity of interest between SEPTA and Transit in the documents and the opinions contained therein. This Court has not been presented with any case involving a factual situation identical to the instant facts; however, an analogous situation arose before The Honorable John Fullam of this Court in Shapiro v. Allstate Insurance Company.[7] Therein, the use-plaintiff recovered a verdict in a tort action against Shapiro which was in an amount greatly in excess of the liability insurance coverage provided Shapiro by the defendant insurance company. The use-plaintiff, claiming that the insurance company acted in bad faith in handling the case, obtained an assignment of the policy-holder Shapiro's rights and then sued the insurance company to recover the unpaid portion of the verdict, which was the excess over the amount paid in the policy. In discussing the attorney-client privilege as it related to letters written to the insurance company by their attorneys in the tort action, my learned colleague, Judge Fullam, said:

> With respect to the privilege argument, defendant appears to misapprehend the situation. On the issue of payment of damages, the legal relationship between the insurance company and its policy-holder is essentially one of indemnity; but insofar as the conduct of the litigation is concerned, it is an agency relationship. Cowden v. Aetna Casualty & Surety Co., 389 Pa. 459, 134 A.2d 223 (1957); Gray v. Nationwide Mutual Insurance Co., supra [422 Pa. 500, 223 A.2d 8]. All of the cases cited in this opinion are uniform in holding that, in its conduct of the litigation and in its handling of settlement negotiations, the insurance company acts in a fiduciary capacity vis-à-vis its assured, and is obligated to act in the utmost good faith, without allowing its own interests to predominate over those of the assured.

> It thus seems clear that, in relation to counsel retained to defend the claim, the insurance company and the policy-holder are in privity. Counsel represents both, and, at least in the situation where the policy-holder does not have separate representation, there can be no privilege on the part of the company to require the lawyer to withhold information from his other client, the policy-holder. In short, I am satisified that, with respect to all matters from the beginning of the litigation until the termination of the attorney-client relationship between the assured and the attorney, there can be no attorney-client privilege which would prevent disclosure to the policy-holder.[8]

In the case at hand, SEPTA and Transit had a privity relationship arising out of an insurance contract. SEPTA had an obligation in defending the claim of Mrs. Davis to protect the rights

---

7.  44 F.R.D. 429 (E.D.Pa.1968).

8.  Id. at 431.

of the excess insurance carrier as well. Furthermore, in a limited sense, counsel for PTC did represent both PTC (SEPTA) and Transit in the Davis claim for it was Transit which was liable for the excess if Mrs. Davis received a verdict.

As pointed out by Professor Wigmore, in some instances the attorney-client privilege is not an absolute one. In discussing this limitation, he states:

> There may be a relative, not an absolute, confidence.

> The chief instance occurs when the *same attorney acts for two parties* having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other.[9]

This limitation to the attorey client privilege has been recognized both in the federal courts [10] and in the courts of the Commonwealth of Pennsylvania,[11] and has also been held to apply in the case of an attorney representing both the insured and his insurer.[12]

It would be unrealistic to separate the interests of SEPTA and Transit by refusing disclosure of the contested communications which involve the defense of Mrs. Davis' claim when this present lawsuit arises out of that claim. Here, the insurance company and the insured had a common interest in the defense of the suits against the insured. SEPTA has a duty under the contract to make a fair and frank disclosure. Plaintiff cannot use the cloak of the attorney-client privilege to shield these communications when such a shield would thwart the intention of that very insurance policy upon which the plaintiff has brought suit. By the terms of that insurance policy and SEPTA's resultant contractual relationship with Transit, we find that SEPTA has waived the right to assert an attorney-client privilege against Transit under the facts of this case.

---

9. 8 Wigmore, Evidence § 2312, at 603–04 (McNaughton rev. 1961).

10. Grand Trunk Western R. Co. v. H. W. Nelson Co., 116 F.2d 823 (6th Cir. 1941).

11. Brown v. Moosic Mountain Coal Co., 211 Pa. 579, 61 A. 76 (1905).

12. Car and General Ins. Corp. v. Goldstein, 179 F.Supp. 888 (S.D.N.Y.1959).