**TRUCK INSURANCE EXCHANGE**

v.

**ST. PAUL FIRE AND MARINE IN-SURANCE COMPANY**

v.

**AMERICAN SECURITY VAN LINES.**

Civ. A. No. 73–1793.

United States District Court,
E. D. Pennsylvania.

Feb. 5, 1975.

William F. Sweeney, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for plaintiff.

Edwin L. Scherlis, Jonathan Wheeler, Frank & Margolis, Philadelphia, Pa., for defendant.

John J. O'Brien, Jr., Philadelphia, Pa., for third-party defendant.

MEMORANDUM AND ORDER.

BRODERICK, District Judge.

Currently before this Court is plaintiff's Motion for a Protective Order

seeking to bar the production of the records and files of Charles Bogdanoff, Esq. and the deposition of Mr. Bogdanoff. Oral argument was held on November 22, 1974.

This action was commenced by the plaintiff, Truck Insurance Exchange, in an effort to recover by way of indemnity and/or contribution against the defendant, St. Paul Fire and Marine Insurance Comany (St. Paul), the amounts it paid on behalf of American Security Van Lines (American Security), in settlement of a verdict obtained by Lt. James A. Zimble in a negligence action against American Security. Truck Insurance Exchange also seeks reimbursement for the attorney's fees it paid to Charles Bogdanoff, Esq. to defend the suit brought by Lt. Zimble against American Security. It is the contention of Truck Insurance Exchange that St. Paul was actually the insurer of American Security and that St. Paul should have defended American Security in the suit brought against it by Lt. Zimble. Truck Insurance Exchange further argues that as a consequence of its insurance contract, St. Paul is liable for the amounts Truck Insurance Exchange paid on behalf of American Security in settlement of the underlying lawsuit and the fees it paid Mr. Bogdanoff to defend American Security.

On August 1, 1970, Lt. James A. Zimble was struck and injured in Needles, Arizona by a truck being operated by American Security. A lawsuit was subequently filed by Lt. Zimble against American Security in the United States District Court for the Eastern District of Pennsylvania which was settled after a verdict in favor of the plaintiff. This action was defended by Charles Bogdanoff, Esq. of Philadelphia at the request of Truck Insurance Exchange, the insurance carrier for American Security. The truck which struck Lt. Zimble was leased by American Security from Morgan Van and Storage (Morgan) in July of 1970. Morgan agreed in its lease with American Security to indemnify the lessee against any loss or damage resulting from the negligence of any driver furnished by the lessor Morgan.[1] It is unclear whether the driver of the truck which struck Lt. Zimble was an employee of Morgan. It is uncontested, however, that Morgan was an insured of the defendant St. Paul. This fact became known to the plaintiff, Truck Insurance Exchange, at some point during the litigation brought by Lt. Zimble, and Truck Insurance Exchange made a demand upon the defendant St. Paul to take over the defense of American Security on the ground that St. Paul insured Morgan who had agreed to indemnify American Security. In this lawsuit, plaintiff Truck Insurance Exchange seeks to recover from the defendant St. Paul the amounts it paid to Lt. Zimble in settlement of the underlying lawsuit and to Mr. Bogdanoff for attorney's fees.

Defendant St. Paul contends it has no enforceable insurance contract with American Security under which it can be held liable. In the alternative, defendant St. Paul contends that even if there is an enforceable insurance contract, it is exempt from liability because the plaintiff Truck Insurance Exchange did not give it timely notice. St. Paul also questions the reasonableness of the settlement made with Lt. Zimble and the amount of fees paid to Mr. Bogdanoff. In connection with its defense of this action, St. Paul seeks the file and the deposition of Charles Bogdanoff, Esq.

1. The Agreement provided in part:
(d) Agrees that the lessee shall not be liable for any loss or damage to or destruction of said leased vehicle(s) while it is being operated by or is in the care and control of driver(s) furnished therewith.

(e) Agrees to indemnify Lessee against (1) any loss resulting from injury or death of such driver(s) and (2) any loss or damage resulting from the negligence, incompetence or dishonesty of such driver(s).

Plaintiff Truck Insurace Exchange contends that the information sought from Mr. Bogdanoff is protected by the common law privilege between attorney and client as well as by Rule 26(b)(3) of the Federal Rules of Civil Procedure.

*Attorney-Client Privilege*

The attorney-client privilege in Pennsylvania as set forth in 28 P.S. § 321 forbids counsel to testify as to confidential communications "made to him by his client". A strict interpretation of this statute would consider as privileged only a communication from a client to an attorney. LaRocca v. State Farm Mutual Automobile Insurance Co., 47 F.R.D. 278 (W.D.Pa.1969). However, a more realistic approach would seem to be that set forth in Rule 503(b) of the Proposed Federal Rules of Evidence [2] which would permit a client to claim as privileged confidential communications "between himself or his representative and his lawyer or his lawyer's representative".

The cases and the Proposed Rules of Evidence are uniform in holding, however, that when a lawyer represents two clients in a matter of common interest, the privilege cannot be claimed by one client as to communications made by him to the attorney when offered in an action between the clients. Rule 503(d)(5) of the Proposed Rules of Evidence; [3] LaRocca v. State Farm Mutual Automobile Insurance Company, 47 F.R.D. 278 (W.D.Pa.1969); Bourget v. Government Employees Insurance Company, 48 F.R.D. 29 (D.Conn.1969). In such a case either party may waive the privilege and the communication can be compelled.

In Shapiro v. Allstate Insurance Company, 44 F.R.D. 429 (E.D.Pa.1968), the plaintiff sued his insurance company claiming bad faith on its part in handling a prior tort action brought against the plaintiff which resulted in a verdict greatly in excess of the liability insurance coverage provided the plaintiff by the defendant insurance company. The defendant insurance company claimed that the attorney-client privilege precluded it from turning over certain relevant documents requested by the plaintiff. My learned colleague, Judge Fullam, in holding the attorney-client privilege inapplicable under such facts, stated:

[T]he legal relationship between the insurance company and its policy-holder is essentially one of indemnity; but insofar as the conduct of litigation is concerned, it is an agency relationship. [Citations omitted]. All of the cases cited in this opinion are uniform in holding that, in its conduct of the litigation and in its handling of settlement negotiations, the insurance company acts in a fiduciary capacity vis-à-vis its assured, and is obliged to act in the utmost good faith, without allowing its own interests to predominate over those of the assured.

It thus seems clear that, in relation to counsel retained to defend the claim, the insurance company and the policy-holder are in privity. Counsel represents both, and, at least in the

---

2. Rule 503(b) of the Proposed Rules of Evidence provides in relevant part:

    (b) *General rule of privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, . . . .

3. Rule 503 of the Proposed Rules of Evidence provides:

    (d) *Exceptions.* There is no privilege under this rule:

    .    .    .    .    .

    (5) *Joint clients.* As to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients.

situation where the policy-holder does not have separate representation, there can be no privilege on the part of the company to require the lawyer to withhold information from his other client, the policy-holder. In short, I am satisfied that, with respect to all matters from the beginning of the litigation until the termination of the attorney-client relationship between the assured and the attorney, there can be no attorney-client privilege which would prevent disclosure to the policy-holder.

This reasoning is persuasive under the facts of this case. The plaintiff, Truck Insurance Exchange, is claiming that the defendant, St. Paul, was the insurer of American Security in the underlying lawsuit and that since it was acting on behalf of St. Paul, Truck Insurance Exchange has a right to recover whatever it paid on behalf of St. Paul. If the plaintiff's allegation proves correct, Mr. Bogdanoff, the attorney who defended the underlying action brought by Lt. Zimble, was the attorney representing both the plaintiff, Truck Insurance Exchange, and the defendant, St. Paul. Therefore, neither client can claim the attorney-client privilege when waived by the other and the privilege is inapplicable to the facts of this case.

*Rule 26(b)(3)*

██ Much of the material which the defendant, St. Paul, seeks to discover from Mr. Bogdanoff may consist of "memorandum, statements, and mental impressions" which are not covered by the attorney-client privilege.[4] Plaintiff, Truck Insurance Exchange, seeks to protect such material from discovery under Rule 26(b)(3) of the Federal Rules of

Civil Procedure. Rule 26(b)(3) reads as follows:

Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

This Court finds that the defendant, St. Paul, has substantial need of the discovery sought from Mr. Bogdanoff and that it is unable without undue hardship to obtain the substantial equivalent of the materials by other means and thus has met the initial requirement of 26(b)(3). Plaintiffs argue, however, that the files of Mr. Bogdanoff contain "mental impressions, conclusions, opinions, or legal theories of an attorney" and are absolutely immune from discovery.[5]

The recent decision of The Duplan Corporation v. Moulinage Et Retorderie De Chavanoz, 509 F.2d 730 (Cir.1973) lends support to the plaintiff's argument

---

4. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Plaintiff, in its motion for a protective order, has not stated which materials in Mr. Bogdanoff's file are protected from discovery under the attorney-client privilege and which are protected as work-product under Rule 26(b)(3) of the Federal Rules of Civil Procedure.

5. To the extent that the discovery material requested does not contain "mental impressions, conclusions, opinions, or legal theories" the material is clearly discoverable.

for a protective order. In that case the plaintiff, claiming patent misuse and inequitable conduct on the part of the defendant in dealing with the United States Patent Office, sought a declaratory judgment that 21 patents owned by the defendant were invalid, unenforceable, and not infringed. To support that claim, the plaintiff sought discovery of the work product material developed by the defendant's attorneys in connection with the settlement of earlier unrelated lawsuits. In determining that such material was immune from discovery, the Fourth Circuit said:

> [S]uch opinion work product material, as distinguished from material not containing mental impressions, conclusions, opinions, or legal theories, is immune from discovery although the litigation in which it was developed has been terminated.
>
> .    .    .    .    .    .
>
> In our view, no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories.

Plaintiff contends that the information sought by the defendant in this case is immune from discovery in that it would require Mr. Bogdanoff to disclose "mental impressions, conclusions, opinions, or legal theories of an attorney  .   .   . of a party concerning the litigation."

Although the *Duplan* holding lends support to the plaintiff's position, the facts before us in this case are different in several important respects. In *Duplan,* the plaintiff sought discovery of material prepared by defendant's attorney in a totally unrelated and settled case on the ground that the material would be helpful to the plaintiff in the preparation of its case; whereas in the matter before this Court the underlying litigation is the basis for the present lawsuit. Here, the plaintiff has alleged that the defendant, St. Paul, had a contractual obligation to defend and to reimburse the plaintiff for the amount of the settlement with Lt. Zimble. Plaintiff seeks to enforce a contract under which American Security had certain obligations to the defendant. By this motion for a protective order, the plaintiff now seeks to preclude discovery as to whether American Security fulfilled those obligations. In the *Duplan* case, no such contractual relationship was alleged. Further, in this case the plaintiff is seeking counsel fees for the services of Mr. Bogdanoff, whose file the defendant seeks to discover. Indeed, the plaintiff seeks counsel fees on the ground that at the time Mr. Bogdanoff defended American Security, he was in fact acting on behalf of the defendant, St. Paul. The plaintiff, Truck Insurance Exchange, seeks to have the defendant, St. Paul, pay for Mr. Bogdanoff's services while at the same time claiming that the defendant, St. Paul, has no right to examine Mr. Bogdanoff's file.

This Court was faced with a similar situation in Southeastern Pennsylvania Transportation Authority v. Transit Casualty Company, 55 F.R.D. 553 (E.D. Pa.1972). In that case, Transit Casualty Company insured the Philadelphia Transportation Company (PTC) for all losses resulting from PTC's liability for personal injury and property damage in excess of $50,000.00. The Southeastern Pennsylvania Transportation Authority (SEPTA), the successor and assignee of all policies of insurance under which PTC was insured and all claims of PTC, brought suit against Transit Casualty Company for an excess claim which the defendant refused to pay on the ground that it had not received the notice required under its insurance contract. The defendant, Transit Casualty Company, claimed that SEPTA failed to properly advise the insurance company of its potential liability in the underlying damage suit.[6] Transit Casualty sought dis-

---

6. In the *SEPTA* case it was uncontradicted that Transit Casualty Company was an insurer for the excess sums for which SEPTA was liable. The sole issue was whether

covery of the claim and litigation files pertaining to the underlying suit. SEPTA resisted the discovery attempt on the ground that some of the documents were within the attorney-client privilege.[7] In holding that the attorney's files were not privileged in such a situation, this Court said:

> It would be unrealistic to separate the interests of SEPTA and Transit by refusing disclosure of the contested communications which involve the defense of Mrs. Davis' claim when this present lawsuit arises out of that claim. Here, the insurance company and the insured had a common interest in the defense of the suits against the insured. SEPTA has a duty under a contract to make a fair and frank disclosure. Plaintiff cannot use the cloak of the attorney-client privilege to shield these communications when such a shield would thwart the intention of that very insurance policy upon which the plaintiff has brought suit. By the terms of that insurance policy and SEPTA's resultant contractual relationship with Transit, we find that SEPTA has waived the right to assert an attorney-client privilege against Transit under the facts of this case.

We find that the same reasoning should control this case. Here the plaintiff, Truck Insurance Exchange, has commenced a lawsuit claiming that the defendant, St. Paul, was an insurer of American Security in the underlying lawsuit. If the contract is enforceable against the defendant, St. Paul, there is no question that its provisions are binding upon the plaintiff who seeks reimbursement pursuant to said contract.[8]

---

SEPTA had met its contractual duties which included: (1) notice to the Company of its potential liability; (2) furnishing the Company with a copy of all summons and pleadings; (3) opening its books and records for inspection for the Company.

7. Although the discovery in the *SEPTA* case was resisted solely on the basis of the attorney-client privilege and not Rule 26(b)(3) of the Federal Rules of Civil Procedure, the reasoning of the *SEPTA* case applied equally well to this case.

8. The following provisions are contained in St. Paul's insurance contract with Morgan. (The contract upon which the plaintiff relies for reimbursement):

3. INSURED'S DUTIES IN THE EVENT OF LOSS, OCCURRENCE, CLAIM OR SUIT—

(a) Upon the occurrence of any casualty or event for which coverage is afforded by this Policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable . . . .

(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of bodily injury or property damage with respect to which issuance is afforded under this Policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

\* \* \* \* \*

4. ASSISTANCE AND COOPERATION OF THE INSURED—The Insured shall cooperate (except in a pecuniary manner) with the Company and, at the Company's request and expense, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the casualty or event.

The defendant seeks the file of Charles Bogdanoff, Esq. to determine whether American Security fulfilled its obligations under the insurance contract, and also to determine whether the settlement and the attorney's fees were reasonable. American Security, the insured, had a duty to cooperate and assist the defendant in handling the lawsuit. If the aforesaid insurance contract was applicable to the underlying lawsuit, it seems anomalous for plaintiff to argue that St. Paul cannot have access to the files.

Moreover, the materials in Mr. Bogdanoff's file are sought here because they are at issue in this action before the Court. The activities of counsel in the underlying lawsuit are the basis of St. Paul's defense in this case. Kirkland v. Morton Salt Co., 46 F.R.D. 28 (N.D.Ga.1968). In 4 Moore's Federal Practice, § 26.64 [4] at 26-447 (2d Ed. 1974), this specific problem is addressed:

> The authors suggest that while Rule 26(b)(3) provides that protection against discovery of the attorney's or representative's "mental impressions, conclusions, opinions, or legal theories" *shall* be provided, such protection would not screen information directly at issue . . . .

Although Rule 26(b)(3) by its terms appears limited to the discovery of "documents and tangible things", 4 Moore's Federal Practice, § 26.64 [4] at 26-451 (2d Ed.1974), no argument has been presented as to why the same reasoning would not be equally applicable to the plaintiff's claim of privilege or immunity in connection with the deposition of Mr. Bogdanoff. The work product doctrine of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) does not provide a privilege or an immunity to Mr. Bogdanoff in the situation now before the Court.

According, the following Order is entered:

## ORDER

And now, to wit, this 5th day of February, 1975, upon consideration of the plaintiff's Motion for Protective Order, it is hereby Ordered that the Motion is denied.

* * * * *

6. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS—As respects any insurance afforded by the terms of this Policy, the Company shall:

(a) Defend in the name and on behalf of the Insured any suit against the Insured alleging injury, sickness or disease, damage or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company;

* * * * *

13. ACTION AGAINST COMPANY—No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.