NORTHWOOD NURSING & CONVALES-CENT HOME, INC. and Nursecare Health Centers, Inc.

v.

The CONTINENTAL INSURANCE COMPANY.

Civ. A. No. 94–6706.

United States District Court, E.D. Pennsylvania.

April 27, 1995.

Jill A. Douthett, Elizabeth W. Fox, and Lloyd A. Gelwan, Hoyle, Morris & Kerr, Philadelphia, PA, for plaintiffs.

Edward C. Mengel, Jr., John Ashbrook, and Robin H. Rome, White and Williams, Philadelphia, PA, for defendant.

# MEMORANDUM

JOYNER, District Judge.

Today we resolve two discovery motions regarding the same discovery request. Plaintiffs, Northwood Nursing and Convalescent Home, Inc. and Nursecare Health Centers, Inc., moved this Court to Quash Defendant, the Continental Insurance Company's, Subpoena for Documents and Deposition and for Entry of a Protective Order. Defendant opposed this Motion with a Memorandum of Law. Several days later, Defendant filed its own motion, to Compel Compliance with its Subpoena.

The relevant facts of this litigation are as follows. Plaintiffs are defendants in several third-party litigations including one brought by Rose Angoy and two brought by Sue English. Plaintiffs are represented by the law firm of Lentz, Cantor, Kilgore & Massey (LCKM) in the Angoy and English actions, also known here as the underlying cases. Plaintiffs tendered the actions to Continental, Northwood's insurance carrier, for defense and indemnity. Continental has agreed to defend Plaintiffs against Angoy, with a reservation of rights, but has declined to defend and indemnify Plaintiffs against English. Accordingly, this action has been brought, in part seeking a declaratory judgment that Continental has a duty to defend and indemnify Plaintiffs in the Angoy and English actions. In this, the coverage action, Plaintiffs are represented by Hoyle, Morris & Kerr (HMK).

Continental has subpoenaed certain documents and a deposition of LCKM, which subpoena has been objected to by both LCKM and Plaintiffs. The subpoena seeks the following information:

1) Any and all documents [1] referring or pertaining to any claim or potential claim of insurance coverage made or to be made against Continental Insurance Company by or on behalf of Nursecare, Inc. ("Nursecare") and/or Northwood Nursing and Convalescent Homes, Inc. ("Northwood").

---

1. The term "document" or "documents" refers to any [the subpoena continues, and defines documents in expansive terms].

2) Any and all documents reflecting communications between any lawyer at Lentz, Cantor, Kilgore & Massey, Ltd. and any lawyer at Hoyle Morris & Kerr pertaining to the subject matter of the preceding paragraph.

3) Any and all documents reflecting communications by Duke Schneider, Esquire, or any other lawyer at Lentz, Cantor, Kilgore & Massey, Ltd. with anyone concerning a claim asserted by Rose Angoy or a claim asserted by Sue English (without limitation, this request includes all drafts and documents reflecting recipients of copies of communications or other documents).

4) Any and all notes and memoranda of any oral conversations between any lawyer at Lentz, Cantor, Kilgore & Massey, Ltd. and any person at Continental Insurance Company pertaining to Nursecare, Northwood, Penn–Med, JDK, Realty–Vest, James Hubbert or Francis Hayman.

5. Any and all insurance policies or portions of insurance policies issued by Pacific Employers' Liability Company or Continental Insurance Company on which Nursecare, Northwood or Hubbert claims to be an insured.

## A. Attorney–Client Privilege

Plaintiffs seek to quash the subpoena on several grounds.[2] First, they argue that the subpoena requests materials that are protected under the attorney-client privilege. In Pennsylvania, the attorney-client privilege provides: "in a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa. Cons. Stat.Ann. § 5928 (Purdon 1982). Plaintiffs concede that "Continental may be entitled to discover certain documents referring to the underlying third-party action it is defending," but argue that Continental is "not entitled to discover the

tactics and strategies of Plaintiffs' counsel regarding any claims for coverage against Continental for failure to unreservedly defend and indemnify those actions." Pls. Motion to Quash at 9.

Continental, on the other hand, argues that under the "common interest" doctrine, it is entitled to all documents relating to the underlying litigation involving Plaintiffs. The common interest doctrine provides that when one attorney acts for two clients who have a common interest, there is no attorney-client privilege as between the two clients, but that they jointly hold the privilege against anyone else. 8 Wigmore, Evidence, § 2312 (1992); *United States v. Moscony,* 697 F.Supp. 888, 894 (E.D.Pa.1988).

Continental's common interest argument is as follows. Continental, as an insurer with a potential duty to indemnify Plaintiffs, have a common interest with Plaintiffs to either reduce or eliminate any liability Plaintiffs may have to third parties, such as Angoy and English. Therefore, Continental argues, it is considered a common client to any documents held by LCKM and there is no attorney-client privilege between it, Plaintiffs and Plaintiffs' chosen counsel. Continental cites several cases from this District to support its position. The first case it cites, *Shapiro v. Allstate Ins. Co.,* 44 F.R.D. 429 (E.D.Pa. 1968), concerned an assertion of the attorney-client privilege by an insurer that had assumed the defense of its insured. Our Court held:

> It thus seems clear that, in relation to counsel retained to defend the claim, the insurance company and the policy-holder are in privity. Counsel represents both, and, *at least in the situation where the policy-holder does not have separate representation, there can be no privilege* on the part of the company to require the lawyer to withhold information from his other client, the policy-holder.

*Id.* at 431 (emphasis added).

Since 1968, this Court has twice applied the common interest doctrine to the situation

---

**2.** Plaintiffs allege standing to make this motion on the ground that they are interested parties in that they claim a personal right or privilege relating to the documents sought. 9A C. Wright & A. Miller, *Federal Practice & Procedure,* § 2459 at 41 (1995); *In re Impounded Case,* 879 F.2d 1211, 1213 (3d Cir.1989).

posited in *Shapiro*, namely, where the policyholder does have separate counsel. In *SEPTA v. Transit Cas. Co.*, 55 F.R.D. 553 (E.D.Pa.1972), our Court reasoned that when an insurance policy gave the insurance company the right to inspect the books and records of the insured and its agents, that the insured had no expectation of privilege against the insurer. Our Court further reasoned that had the insurer "participated in the representation of [the insured] in the [underlying] case, there would have been an identity of interest." *Id.* at 556. Therefore, "in a limited sense, counsel for [the insured] did represent both [the insured] and [the insurer] in the [underlying] claim for it was [the insurer] that was liable" if the underlying plaintiff succeeded on her claim. *Id.* at 557. Accordingly, our Court held that there was no attorney-client privilege between an insured and its insurer even when the insured hired separate counsel to represent it in the underlying claim.

Three years later, our Court made a similar ruling in *Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Company*, 66 F.R.D. 129 (E.D.Pa.1975). There, our Court held that "if the plaintiff's allegation proves correct, Mr. Bogdanoff, the attorney who defended the underlying action brought by Lt. Zimble, was the attorney representing both the plaintiff, Truck Insurance Exchange, and the defendant, St. Paul. Therefore, neither client can claim the attorney-client privilege when waived by the other and the privilege is inapplicable to the facts of this case." *Id.* at 133. Continental relies on these cases, as well as others from other jurisdictions, to support its argument that there is no privilege against it.

Continental does not cite *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Cov. Litig.*, MDL 764, 1990 WL 90495 (E.D.Pa. June 27, 1990). This case distinguished the above cases on the ground that they each "concern situations in which the insurer and policyholder were in privity and a single attorney or law firm represented both parties." *Id.* at *3. It held, accordingly, that when the insured had hired separate counsel to "oversee" the counsel appointed by its insurer, there was no common client

relationship between the insurer and plaintiff with respect to the "oversight" attorney. *Id.* at *4.

To our knowledge, no other Eastern District of Pennsylvania case has addressed this issue, nor has the Third Circuit, nor any Pennsylvania state court. However, other states have. Most notably, New Jersey has held that the common interest doctrine does not apply in the separate counsel situation. In *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66 (D.N.J.1992), the District Court of New Jersey began by noting that the case presented an "increasingly common dispute." *Id.* at 68. The Court went on to hold that it seemed "clear that use of the [common interest] doctrine is warranted when there is a dispute between insurer and insured regarding underlying litigation in which the insured was represented by an attorney appointed by the insurer." *Id.* at 69. The Court ruled, though, that when there is separate counsel the main question should be whether "the documents were generated with the reasonable expectation that the documents would be concealed from plaintiff's insurer." *Id.*

In reality, it held, "the fiction that there is no reasonable expectation of privacy due to an identity of interest is contrary to the perception under which the insured would operate in the underlying litigation." *Id.* at 70. Further, the Court pointed out that there generally is not a true identity of interests between an insurer and its insured, because "the parties do not have a common interest in characterizing how the damage occurred, what type of damage occurred, or how the plaintiff responded." *Id.* (citing *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 142 F.R.D. 408, 418 (D.Del.1992)). Therefore, the Court ruled that to "permit insurers unrestrained access to attorney-client communications and work product where those insurers refused to take part in litigation despite notice and an opportunity to participate would distort the 'common interest' doctrine." *Id.* at 70; *NL Indus., Inc. v. Commercial Union Ins. Co.*, 144 F.R.D. 225, 231 (D.N.J.1992).

Today's discovery environment is significantly different than the discovery environment that existed twenty years ago, when

*Truck Insurance* and *SEPTA* were decided. Since then we have seen the rise of the Rambo lawyer, as well as the 1980, 1983 and most significantly, 1993 Amendments to the Federal Rules of Civil Procedure. We find that the more recent cases, which examine the common interest doctrine more critically, are more relevant to today's litigators and today's litigation environment than are cases decided in the 1960s and 1970s.[3]

■ Turning now to the documents subpoenaed by Continental, these appear to fall into three general categories. First, Continental requests documents relating to the underlying action that it has agreed to defend, the Angoy action. Because Continental has agreed to defend this action, Plaintiffs have no reasonable expectation of privilege. Moreover, we find that there is a common interest, and a privity between Continental and Plaintiffs on the Angoy action, such that prevents an attorney-client relationship between them.

■ Second, Continental requests documents with respect to the actions for which Continental has denied coverage, the English actions, as well as actions for which it has not yet made a coverage determination. We find that Continental has not demonstrated an identity of interest with respect to these actions such that would make it a common client with Plaintiffs. Continental has declined coverage of the English actions; accordingly, it is reasonable that Plaintiffs have proceeded with the reasonable expectation of a privilege between it and its chosen lawyers, and not with Continental. Continental has not yet made determinations on several other claims, so it is reasonable that Plaintiffs are presently proceeding in the expectation of an attorney-client privilege. *NL Indus.*, 144 F.R.D. at 231.

■ Third, Continental requests documents relating to this coverage action. Continental argues that the attorney-client privi-

lege does not attach to any communications between LCKM and HMK because these are not communications between an attorney and client. It is basic, though, that the attorney-client privilege extends beyond the attorney but also to agents. *Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co.*, 734 F.Supp. 204, 207 (W.D.Pa.1989). Accordingly, otherwise privileged communications between two attorneys hired by the client are nonetheless protected by the attorney-client privilege.

### B. Attorney Work Product

■ In addition to the attorney-client privilege, Plaintiffs assert that the subpoenaed documents are protected by the work product doctrine. This is provided for in Fed. R.Civ.P. 26(b)(3), which states:

a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or of trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without under hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Plaintiffs argue that Request 2, for example, clearly seeks attorney work product in that it seeks "any and all documents reflecting communications between any lawyer at" LCKM and HMK concerning "any claim or potential claim of insurance coverage made or to be made against Continental" by Plaintiffs.

---

**3.** We are aware that some other courts have recently held that there is a common interest with respect to the underlying claims, even when there is a dispute as to coverage. Most frequently cited is *Waste Mgmt., Inc. v. International Surplus Lines*, 144 Ill.2d 178, 161 Ill.Dec. 774, 783, 579 N.E.2d 322, 331 (1991). However, this holding has been criticized by other courts, such as the District Court of Delaware. *Remington Arms*, 142 F.R.D. at 417 ("the Illinois Supreme Court accepted this strange theory,.... [and a] few other courts appear to have accepted this broad interpretation.") (citations omitted).

In response, Continental asserts that it has substantial need of the documents to defend Plaintiffs' allegation of bad faith dealing with respect to the tender of the third-party claims against Plaintiffs. It argues that "Plaintiffs do not deny that they will seek to use testimony and documents from LCKM attorneys at trial to support this bad faith claim," and that it cannot effectively cross-examine these lawyers without access to LCKM's "opinions, memoranda, communications and other documents reasonably calculated to lead to the discovery of admissible evidence." Cont. Opp. to Motion to Quash at 11.

Continental cites *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 932 (N.D.Cal.1976) as support for this argument. *Handgards* was a claim that defendant had brought a series of bad-faith patent infringement lawsuits against plaintiff. Defendant argued that it acted in good faith, and named its counsel to testify to its good intent in bringing the lawsuits. The Court ruled that plaintiff could take discovery of the attorney's files because defendant had waived any privilege by naming its counsel as a witness. Continental argues that this is the case here, where LCKM attorneys have been named as potential witnesses by Plaintiffs in their Self–Executing Disclosure Statement.

In the Self–Executing Disclosure Statement, Plaintiffs name two attorneys from LCKM as people likely to have information, but the subjects on which they have information are materially different from the subjects named in *Handgards*. Here, the attorneys allegedly have information on various stock purchase agreements, physical conditions at the nursing home, accounting practices at the nursing home, and other similar subjects. At no point are these attorneys identified as witnesses with respect to Plaintiffs' intent, or anything else similar to the situation in *Handgards*. Accordingly, we do not find that "opinions, memoranda, communications," are necessary to Continental's defense.

■■■ Continental also asserts that by bringing a claim for attorneys' fees in the underlying litigations and alleging that Continental acted in bad faith in handling Plaintiffs' claims, Plaintiffs have put at issue "documents evidencing the knowledge, conclusions and communications of LCKM." Cont. Opp. to Motion to Quash at 12 (citing *Bird v. Penn Central Co.*, 61 F.R.D. 43, 47 (E.D.Pa. 1973)). Continental misapprehends the "at issue" doctrine, however. A party places an attorney's advice at issue when "the client asserts a claim or defense, and attempts to *prove* that claim or defense by disclosing or describing an attorney client communication." *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994) (emphasis added). Accordingly, when one party alleges that another acted "willfully," for example, the advice of the party's counsel may be relevant, but it is not placed in issue until the party defends by "describing that advice and by asserting that he relied on that advice." *Id.* Even if the attorney's work product is highly relevant to the present litigation does not necessarily mean that the work product is at issue. *Id.*

Following *Rhone–Poulenc*, we find that Continental has not demonstrated that Plaintiffs have actually placed the "knowledge, conclusions and communications" of LCKM at issue in this litigation. The basic thrust of this case centers on breach of contract for insurance coverage. Accordingly, LCKM's knowledge, conclusions and communications would appear to be irrelevant to the basic nature of this case. Of course, to the extent that Plaintiffs actually do place their attorneys' advice at issue, related material would have to be disclosed to Continental.[4]

■■■ Even if we had found that Plaintiffs had put their attorneys' work product at issue, or that the information was going to be used to prove an element of Plaintiffs' case,

---

4. "Facts are discoverable, the legal conclusions regarding those facts are not. A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer." *Rhone–Poulenc*, 32 F.3d at 864. Plaintiffs have named LCKM counsel as witnesses on several issues. All non-privileged documents relating to those matters, must, of course, be produced.

Continental has not made a sufficient showing that it has a "compelling need" for the documents. *Bird*, 61 F.2d at 47. Rather, Continental's assertions of need are bland, conclusory statements. *See* Cont.Opp. to Motion to Quash at 11–13. In contrast, Plaintiffs argue that Continental would not be prejudiced by quashing the subpoena because, Plaintiffs contend, Continental has already received most of the non-privileged material in the course of this coverage litigation. Continental at no point denies that it has received most of the non-privileged materials, and once the discovery and the privilege log are produced, it will be able to verify this. In the meantime, we do not find that Continental has made a showing of sufficient need to warrant production of attorney work product under Rule 26(b)(3).

■ With respect to the privilege log, Plaintiffs argue that because the subpoena is directed to a law firm and because the subpoena requests documents protected by the attorney-client privilege, that "generation of a log of the hundreds of responsive documents to which Plaintiffs claim protection is inherently oppressive and needlessly burdensome; such a log would not make it more clear that the documents sought are privileged." Pls. Motion to Quash at 7 n. 3. Accordingly, they want this Court to relieve them of their Rule 26(b)(5) duties.

We are unwilling to do this. First, Rule 26(b)(5) states that when asserting a privilege, a party *"shall* describe the nature of the documents, communications, or things not to be produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Plaintiffs have not made an undue burden or oppression argument with any level of specificity, but simply assert that they have "hundreds" of documents, "most" of which are privileged. Without a further explanation, we will not find that compilation of a privilege log would be unduly burdensome, and so there is no warrant for relieving Plaintiffs of their duties under Rule

26(b)(5). *See Transamerica Computer Co. v. IBM,* 573 F.2d 646, 649 (9th Cir.1978) (17 million potentially privileged documents).[5]

■ Finally, Plaintiffs seek their attorneys' fees for resisting this subpoena. They argue that Continental has breached its duty under Fed.R.Civ.P. 45(c), which authorizes awards of sanctions. We will deny attorneys' fees at this time. Given the state of the law, Plaintiffs had no justification for not releasing the documents relating to the Angoy claim, because Continental is defending that claim. Moreover, Plaintiffs did not abide by Rule 26(b)(5) and produce a privilege log which could have alleviated some of the difficulties. However, we also do not award sanctions to Continental because it did seek information that it concedes is privileged, and did not properly modify its subpoena after receiving LCKM's objections. Cont. Opp. to Motion to Quash at 14; Motion to Compel at 2 ¶ 5. An appropriate Order follows.

### ORDER

AND NOW, this 27th day of April, 1995, upon consideration of Plaintiffs' Motion to Quash Defendant's Subpoena for Documents and Deposition and for Entry of a Protective Order (document number 12), and responses thereto, the Motion is hereby GRANTED in PART and DENIED in PART as explained in the attached Memorandum. Upon consideration of Defendant's Motion to Compel Lentz, Cantor, Kilgore & Massey, Ltd. to Comply with Defendant's Subpoena for Documents and Deposition (document number 14), the Motion is hereby GRANTED in PART and DENIED in PART as explained in the attached Memorandum.

---

**5.** Likewise, we deny Plaintiffs' request to quash the records deposition of LCKM on the ground that LCKM only has duplicates of records Plaintiffs also possess. We find that Plaintiffs have not adequately demonstrated undue burden or expense under Fed.R.Civ.P. 45(c)(1).