STATE of Wisconsin, Plaintiff,

v.

HYDRITE CHEMICAL COMPANY, a/k/a Avganic Industries, Inc., Defendant-Third-Party Plaintiff-Appellant,†

v.

The AETNA CASUALTY & SURETY CO., Affiliated FM Ins. Co., American Casualty Co. of Reading PA, American Motorists Ins. Co., Chicago Insurance Co., Continental Casualty Co., First State Ins. Co., First State Underwriters Agency of New England Reinsurance Corp., a/k/a New England Reinsurance Corp., Granite State Ins. Co., Great American Surplus Lines Ins. Co., a/k/a American Empire Surplus Lines Ins. Co., The Home Indemnity Company, Home Insurance Company, International Surplus Lines Ins. Co., a/k/a International Insurance Co., Interstate Fire & Casualty Co., Northbrook Excess & Surplus Ins. Co., as predecessor to Allstate Insurance Company, Old Republic Ins. Company, United States Fire Ins. Co., Certain Underwriters at Lloyds of London and other companies, Third-Party Defendants-Respondents, †

INTERSTATE FIRE & CASUALTY CO., Fourth-Party Plaintiff,

v.

MARYLAND CASUALTY COMPANY, Fourth-Party Defendant.

---

†Petition to review denied.

Court of Appeals

*No. 96–1780. Submitted on briefs July 22, 1997.—Decided May 7, 1998.*

(Also reported in 582 N.W.2d 411.)

On behalf of the defendant-third-party plaintiff-appellant, the cause was submitted on the briefs of *Raymond R. Krueger, David V. Meany* and *Douglas P. Dehler* of *Michael, Best & Friedrich* of Milwaukee and orally argued by *David V. Meany.*

On behalf of the third-party defendants-respondents, the cause was submitted on the brief of *James K. Horstman, Mary A. Sliwinski* and *Anthony P. Katauskas* of *Williams & Montgomery, Ltd.,* of Chicago, and *Richard G. Niess* of *Coyne, Niess, Schultz, Becker & Bauer, S.C.* of Madison and orally argued by *James K. Horstman.*

Before Dykman, P.J., Roggensack and Deininger, JJ.

DYKMAN, P.J. Hydrite Chemical Co. appeals from an order compelling it to disclose certain documents to the respondent insurance companies. Hydrite argues that the documents are protected by the attorney-client privilege and work product doctrine. We conclude that the trial court erroneously exercised its discretion in ordering Hydrite to produce certain documents because the trial court's exercise of discretion was based on an erroneous interpretation of the law. With regard to other documents, we conclude that the trial court properly exercised its discretion. Accordingly, we affirm the trial court's order in part, reverse it in part, and remand for the court to exercise its discretion under the correct legal standard.

## BACKGROUND

This is the second of two lawsuits between Hydrite and its insurers. The first suit was filed in April 1991 by Hydrite and Avganic Industries, a former Hydrite subsidiary, against the respondent insurance companies and several other insurance companies that are not parties to the present action (hereinafter *Hydrite I*). The issue in the first action was whether the insurance company defendants were required to defend and indemnify Hydrite and Avganic with respect to an investigation of environmental property damage in the vicinity of Hydrite's chemical facility in Cottage Grove, Wisconsin. The investigation was conducted pursuant to a corrective action plan imposed upon Avganic and Hydrite by the United States Environmental Protection Agency.

During discovery, Hydrite withheld certain documents under the attorney-client privilege and work product doctrine. Hydrite produced a privilege log identifying the documents it withheld. The defendants moved to compel the production of many of the documents. Lafayette County Judge William Johnston ordered Hydrite to produce a number of them. We granted Hydrite's petition for leave to appeal the discovery order. After briefing on the interlocutory appeal was complete, the Wisconsin Supreme Court decided *City of Edgerton v. General Cas. Co.*, 184 Wis. 2d 750, 517 N.W.2d 463 (1994). Certain insurers moved the court of appeals to remand the case to the trial court to apply the holding of *Edgerton*. This court did so, staying the appeal and directing the trial court to consider the *Edgerton* issues on remand.

On remand, the trial court concluded that, under the holding of *Edgerton*, the insurers did not have a duty to defend or indemnify Hydrite. Accordingly, the court dismissed Hydrite's complaint. Hydrite again appealed. The issues in *Hydrite I* are decided in *Hydrite Chem. Co. v. Aetna Cas. & Sur. Co.*, 220 Wis. 2d 26, 582 N.W.2d 423 (Ct. App. 1998).

The lawsuit underlying this appeal was filed by the State of Wisconsin on November 20, 1995. The State sought compensatory damages from Hydrite, alleging that Hydrite was liable for damage to the groundwater and other property in the area of Hydrite's Cottage Grove facility. Hydrite filed a third-party action against the respondent insurers, seeking defense of the State's action against Hydrite and indemnification for the damages sought by the State.

Shortly after Hydrite filed its third-party complaint, the insurers requested Hydrite to produce copies of any and all documents that Hydrite withheld

on the basis of privilege in *Hydrite I*, which Judge Johnston ordered produced and for which Hydrite sought an interlocutory appeal. Hydrite objected to this request, in part, because the documents sought were protected under the attorney-client privilege and work product doctrine. The insurers filed a motion to compel production of the documents. Hydrite filed the documents with the trial court under seal for *in camera* review.

The trial court ordered Hydrite to produce fifty-eight of the documents that Judge Johnston ordered it to produce in *Hydrite I*. The trial court recognized a "duty to cooperate" exception and an "at issue" exception to the attorney-client privilege and work product doctrine. The court refused to recognize a "common interest" exception. The trial court found that forty-seven of the documents were protected by the attorney-client privilege or work product doctrine, or both, but that the protection against disclosure had been pierced by the "duty to cooperate" and "at issue" exceptions. The trial court did not make a determination as to whether six of the documents were protected by the attorney-client privilege or work product doctrine, concluding that even if those documents were protected, that protection was pierced by the "duty to cooperate" and "at issue" exceptions. The court also found that two of the documents were work product, but that the insurers were entitled to the documents because of substantial need and undue hardship. Hydrite appeals from the trial court's determination regarding these fifty-five documents. Finally, the trial court found that the attorney-client privilege and work product doctrine did not apply to three of the documents. Hydrite does not challenge the trial court's determination regarding these three documents.

## STANDARD OF REVIEW

 Hydrite and the insurers disagree as to the standard we are to use in reviewing the trial court's decision. In *Franzen v. Children's Hosp.*, 169 Wis. 2d 366, 376, 485 N.W.2d 603, 606 (Ct. App. 1992), the court set forth the following standard of review for motions to compel discovery:

> Motions to compel discovery are addressed to the discretion of the trial court. Discretionary decisions will be upheld on review when the trial court applies the relevant law to facts of record using a process of logical reasoning. Basing a decision upon an error of law is an abuse of discretion. When a trial court construes a statute in order to determine the correct legal principles governing the matter at hand, the construction is a question of law which this court reviews without deference to the trial court's decision.

(Footnotes omitted.)

Here, the trial court recognized an "at issue" exception and a "duty to cooperate" exception to the attorney-client privilege and work product doctrine. To determine whether Wisconsin law allows for these exceptions, we need to construe § 905.03, STATS., which sets forth the attorney-client privilege, and § 804.01(2)(c), STATS., which sets forth the work product doctrine. This presents a question of statutory construction, which we review *de novo*. If the trial court made an error of law in recognizing these exceptions, then it erroneously exercised its discretion.

## ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE

Hydrite does not challenge the trial court's determination that three of the documents were not protected by either the attorney-client privilege or work product doctrine.[1] Accordingly, we affirm the trial court's order with regard to those documents. Hydrite does argue, however, that the court erred in concluding that two of the documents were work product, but that the insurers were entitled to the documents because of substantial need and undue hardship. The insurers argue that the court properly exercised its discretion in concluding that certain documents were not protected by the attorney-client privilege or the work product doctrine.

The two documents that the trial court concluded were work product, but discoverable due to the insurers' substantial need and undue hardship, were notes prepared by Paige Freeman, one of Hydrite's attorneys, in connection with interviews of two of Hydrite's employees who are now deceased. The interviews occurred in 1989. Hydrite argues that the trial court erred in ordering production of these notes.

Hydrite argues that the trial court erred in ordering it to disclose work product because the insurers failed to make the required showing of "great prejudice." In support of its argument, Hydrite cites *State ex rel. Dudek v. Circuit Court*, 34 Wis. 2d 559, 591, 150 N.W.2d 387, 405 (1967), which states that "if a matter or writing is classified work product because it reflects the mental impressions of the investigating

---

[1] Bates numbers P10471-P10478, P10629, and P11284-P11285. Hydrite was allowed to redact hand-written notes from bates number P11284-P11285.

attorney, only a showing of nonavailability after diligent search and of great prejudice to preparation could justify an order for production." *Id.*

We do not agree that the trial court erroneously exercised its discretion. *Dudek* further states: "[W]hat is good cause for discovery depends upon the reason a certain item is classified work product and the reason advanced for demanding discovery. This approach to the problem requires the exercise of sound judicial discretion by the trial judge confronted with the problem." *Id.* at 592, 150 N.W.2d at 405.

The work-product doctrine as set forth in *Dudek* is now generally codified by § 804.01(2)(c)1, STATS.; *Ranft v. Lyons*, 163 Wis. 2d 282, 297, 471 N.W.2d 254, 260 (Ct. App. 1991). This section states:

> Subject to par. (d) [which deals with the discovery of facts known and opinions held by experts] a party may obtain discovery of documents and tangible things otherwise discoverable under par. (a) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that the party seeking discovery is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Section 804.01(2)(c)1. Section 804.01(2)(a) states that, "Parties may obtain discovery regarding any matter,

not privileged, which is relevant to the subject matter involved in the pending action . . . ."

Our review of the notes in question does not reveal any "mental impressions" of the attorney, other than the fact that the attorney decided which facts were important enough to write down and which ones were not. At the hearing on the motion to compel, the insurers asserted their need for the documents. The insurers noted that Hydrite investigated its site contamination during the 1980s, but the insurers were not allowed to conduct any investigations until 1991. The insurers also noted that the memories of the people interviewed were fresher in the 1980s and that the documents could be persuasive for impeachment purposes or to refresh the recollections of the people that they needed to depose. Finally, the insurers stated that some of the people interviewed are now deceased, and therefore there was no way for the insurers to depose them.

The trial court found that the insurers had a substantial need for the notes and were unable without undue hardship to obtain a substantial equivalent by other means. We will uphold the trial court's discretionary determination if the court applied the relevant law to facts of record using a process of logical reasoning. *Franzen*, 169 Wis. 2d at 376, 485 N.W.2d at 606. The trial court reasoned that the insurers had established a substantial need and undue hardship with regard to these interview notes because the subjects of the interviews were deceased. Because the trial court stated the facts and law in coming to a reasoned and reasonable determination, we conclude that it properly exercised its discretion in determining that the attorney's notes were discoverable.

Hydrite also argues that the trial court erred in failing to conclude that these two documents are protected by the attorney-client privilege. Hydrite contends that these notes "summarize attorney-client privileged communications between an attorney and a representative of a client." The insurers, on the other hand, argue that Hydrite failed to meet its burden to show, by affidavit, sufficient facts to establish the requirements of the privilege.

Wisconsin's attorney-client privilege is set forth in § 905.03, STATS., which provides in relevant part:

> (2) GENERAL RULE OF PRIVILEGE. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client: between the client or the client's representative and the client's lawyer or the lawyer's representative; or between the client's lawyer and the lawyer's representative; or by the client or the client's lawyer to a lawyer representing another in a matter of common interest; or between representatives of the client or between the client and a representative of the client; or between lawyers representing the client.

A communication is considered "confidential" if it is "not intended to be disclosed to 3rd persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Section 905.03(1)(d).

In *Franzen*, the court set forth the burden of proof for establishing that a document is privileged as follows:

If it is asserted that information is privileged, the party asserting the privilege bears the burden to establish that the privilege exists. Privileges created by statute are strictly and narrowly interpreted. When determining whether a privilege exists, the trial court must inquire into the existence of the relationship upon which the privilege is based *and* the nature of the information sought. . . . [S]uch decisions may not be left to the judgment of professionals involved. However, the opponent of the privilege has the burden to challenge the preliminary questions of privilege before the trial court.

*Franzen*, 169 Wis. 2d at 386–87, 485 N.W.2d at 610–11 (footnotes omitted). "A mere showing that the communication was from a client to his attorney is insufficient to warrant a finding that the communication is privileged." *Jax v. Jax*, 73 Wis. 2d 572, 581, 243 N.W.2d 831, 836 (1976) (citation omitted).

In support of its claim of privilege regarding these notes, Hydrite submitted the affidavit of Raymond Krueger, one of its attorneys. The affidavit reads, in relevant part:

3. . . . These documents summarize communications between Attorney Freeman and employees of Hydrite Chemical Co. and its subsidiary, Avganic Industries, Inc. for the purpose of facilitating . . . representation of Hydrite in potential litigation, including insurance coverage litigation against the third-party defendants. . . .
4. These documents have not been disclosed to any third party and have remained confidential for purposes of sec. 905.03, Stats., except for *in camera* inspection . . .

In deciding that these documents were not protected by the attorney-client privilege, the trial court

did not state why this affidavit was insufficient to establish that the privilege exists. Because the trial court did not set forth its reasoning for determining that the notes were not privileged, we cannot conclude that it properly exercised its discretion. We may not exercise the trial court's discretion. *See Wisconsin Ass'n of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 434–35, 293 N.W.2d 540, 545 (1980). Therefore, we reverse the part of the trial court's order compelling Hydrite to disclose these two documents and remand the matter so that the court may set forth its findings of fact and reasoning with regard to its conclusion that the attorney's notes are not privileged.

## EXCEPTIONS TO ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE

Hydrite argues that the "at issue" and "duty to cooperate" exceptions relied upon by the trial court are contrary to Wisconsin law. The insurers, on the other hand, argue that the trial court properly concluded that the attorney-client privilege and work product doctrine were not available because the materials were at issue and because Hydrite had a contractual duty to cooperate. The insurers also argue that we should accept a common interest exception to the attorney-client privilege and work product doctrine. We will address each argument in turn. First, we will determine whether Wisconsin law allows for the exceptions recognized by the trial court. Second, we will examine the trial court's order compelling production in light of our decision on the exceptions.

### "At issue" doctrine

The insurers argue that we should follow the "at issue" doctrine as set forth in *Hearn v. Rhay*, 68 F.R.D.

574 (E.D. Wash. 1975). In *Hearn*, the court concluded that a party asserting an attorney-client privilege has impliedly waived the privilege by its own affirmative conduct when the following three conditions exist:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Id.* at 581. The insurers also cite *Metro Wastewater Reclamation Dist. v. Continental Cas. Co.*, 142 F.R.D. 471, 477 (D. Colo. 1992), which states that "a party impliedly waives the attorney-client privilege when he places a claim or defense at issue, and the document or information in question has a direct bearing on that claim or defense." *See also Potomac Elec. Power Co. v. California Union Ins. Co.*, 136 F.R.D. 1, 4–5 (D.D.C. 1990); *Charlotte Motor Speedway, Inc. v. International Ins. Co.*, 125 F.R.D. 127, 130–31 (M.D.N.C. 1989); *Hoechst Celanese Corp. v. National Union Fire Ins. Co.*, 623 A.2d 1118, 1125 (Del. Super. Ct. 1992).

The insurers argue that Hydrite's affirmative act of filing this lawsuit put the relevant information regarding its knowledge of the soil and groundwater contamination, and its potential liability, at issue. Furthermore, the insurers argue that because Hydrite alleges in its complaint that it has complied with all of the conditions precedent for coverage in the insurers' policies, it has made its compliance a relevant issue. Therefore, the insurers argue that Hydrite must produce the documents.

Hydrite, on the other hand, argues that other jurisdictions have rejected the broad interpretation of the "at issue" doctrine proposed by the insurers. Hydrite argues that the "at issue" doctrine applies only when the party asserting the privilege intends to use the privileged material to prove an asserted claim or defense. For example, in *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 71 (D.N.J. 1992), the court noted that "[t]he 'in issue' doctrine is operative when the party has asserted a claim or defense that he intends to prove by use of the privileged materials." The *Pittston* court determined that the "at issue" doctrine was not applicable because "the plaintiff has not sought to use or inject any privileged documents as a part of a claim or defense." *Id.* In *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994), the court stated:

> Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

*Id.* at 863.[2] Courts have generally rejected the notion that a party waives the attorney-client privilege

---

[2] The *Rhone-Poulenc* court rejected the approach suggested by the insurers. The court reasoned:

> Some decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation. These courts have allowed the opposing party discovery of confidential attorney client communications in order to test the client's contentions. These decisions are of dubious validity. While the opinions dress up their analysis with a checklist of

merely by bringing suit. *See Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 414 (D. Del. 1992). *See also Vermont Gas Sys., Inc. v. United States Fidelity & Guar. Co.*, 151 F.R.D. 268, 277 (D. Vt. 1993); *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 370–71 (D.N.J. 1992); *Aranson v. Schroeder*, 671 A.2d 1023, 1030 (N.H. 1995).

We believe that the restrictive view of the "at issue" doctrine is more consistent with Wisconsin's statutory attorney-client privilege as set forth in § 905.03, STATS. Under the restrictive view, the attorney-client privilege is waived when the privilege holder attempts to prove a claim or defense by disclosing or describing an attorney-client communication. Likewise, under § 905.03, a communication is no longer "confidential," and therefore no longer privileged, when

factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.

As the attorney client privilege is intended to assure a client that he or she can consult with counsel in confidence, finding that confidentiality may be waived depending on the relevance of the communication completely undermines the interest to be served. Clients will face the greatest risk of disclosure for what may be the most important matters. Furthermore, because the definition of what may be relevant and discoverable from those consultations may depend on the facts and circumstances of as yet unfiled litigation, the client will have no sense of whether the communication may be relevant to some future issue, and will have no sense of certainty or assurance that the communication will remain confidential.

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) (citations omitted).

the privilege holder intends to disclose the information to third persons. *See* § 905.03(1)(d).

Under the expansive view of the "at issue" doctrine, the attorney-client privilege is waived when the privilege holder places a claim or defense at issue and the document in question has a direct bearing on that claim or defense, regardless of whether the privilege holder intends to use the document to prove the claim or defense. This expansive view is incongruent with § 905.03, STATS., which states that attorney-client communications remain confidential until the privilege holder intends to disclose the communication to third persons.

Our conclusion is supported by § 905.04(4)(c), STATS. Under this section, the physician-patient privilege does not apply to communications relevant to a patient's physical, mental or emotional condition in any proceedings in which the patient relies upon the condition as an element of the patient's claim or defense. Essentially, a patient waives the physician-patient privilege under this section when the patient places his or her physical condition at issue in any proceeding. A similar provision could have been included in § 905.03, STATS., to provide that the attorney-client privilege is waived when the privilege holder places the substance of a privileged communication at issue in any proceeding. But § 905.03 does not contain a similar provision. The absence of a similar exception leads us to conclude that a privilege holder does not waive the attorney-client privilege when a privileged document becomes relevant to an asserted claim or defense, but the privilege holder does not intend to use the document to prove the claim or defense.

■ In its brief, Hydrite asserts that the insurers have not shown, nor can they show, that it has used or intends to use any privileged communication to prove its case. The insurers do not dispute this contention. After Hydrite established the existence of the attorney-client privilege, the insurers had the burden to challenge Hydrite's intent to keep the privileged documents confidential. *See Dyson v. Hempe*, 140 Wis. 2d 792, 802, 413 N.W.2d 379, 384 (Ct. App. 1987). The insurers have not established that Hydrite intends to disclose privileged communications in proving its claim, and therefore they have not met their burden to establish that the documents lack the requisite confidentiality. Accordingly, we conclude that the trial court erred in ordering Hydrite to produce documents protected by the attorney-client privilege pursuant to the "at issue" doctrine.

■ We do not come to the same conclusion with regard to Wisconsin's work product doctrine. Section 804.01(2), STATS., does not provide that work product is discoverable only when the holder of the work product intends to use it to prove a claim or defense. Rather, work product is discoverable when: (1) it is not privileged; (2) it is relevant; (3) the party seeking discovery has a substantial need for the materials; and (4) the party seeking discovery is unable without undue hardship to obtain the substantial equivalent of the materials by other means.[3]

---

[3] These requirements for discovery are qualified by the second sentence of § 804.01(2)(c)1, STATS., which states: "In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of

The "at issue" doctrine as set forth by the trial court is consistent with § 804.01(2), STATS. In setting forth the exception, the trial court quoted *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66 (D.N.J. 1992), which set forth a three-part test for determining when the "at issue" doctrine applies:

> First, "there must be a legitimate need . . . to reach the evidence sought to be shielded." Second, "there must be a showing of relevance and materiality of that evidence to the issue before the court." Lastly, the party seeking to bar the assertion of privilege must show "by a fair preponderance of the evidence including all reasonable inferences that the information cannot be secured from a less intrusive source."

*Id.* at 71 (citations omitted; alteration in original).

The *Pittston* tripartite test is substantially equivalent to the test set forth in § 804.01(2), STATS., for determining when work product is discoverable. Although *Pittston* uses the term "legitimate need" instead of the "substantial need" language used in § 804.01(2)(c)1, we do not believe that this difference would materially affect the trial court's determination as to whether attorney work product was discoverable. Because the *Pittston* test is consistent with § 804.01(2), STATS., we conclude that the trial court correctly recognized an exception to the work product doctrine.[4]

---

an attorney or other representative of a party concerning the litigation."

[4] Although we uphold the trial court's application of the *Pittston* test, we see no reason why a court should use a test other than the one contained in § 804.01(2), STATS.

The trial court concluded that the attorney-client privilege and work product doctrine were pierced by Hydrite's duty to cooperate contained in the cooperation clause of Hydrite's insurance policies. Although the policies between Hydrite and the insurers were not made part of the record, Hydrite conceded at the hearing on the motion to compel that the policies contained standard duty to cooperate language.

In its brief, Hydrite includes an example of a standard cooperation clause:

**Insured's Duties in the Event of Occurrence, Claim, or Suit.**

(c) The insured shall cooperate with the company and, upon the company's request assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the · insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

In support of its conclusion that this duty to cooperate pierced the attorney-client privilege and work product doctrine, the trial court cited *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 579 N.E.2d 322 (Ill. 1991), which provides:

The scope of the duties imposed upon an insurer and its insured are defined and controlled

by the terms of the insurance contract. Any condition in the policy requiring cooperation on the part of the insured is one of great importance and its purpose should be observed. The basic purpose of a cooperation clause is to protect the insurer's interests and to prevent collusion between the insured and the injured party. Additionally, the very principles of law which govern contracts generally apply with equal force to contracts of insurance. Finally, where the provisions of the policy are clear and unambiguous, it is the duty of the court to enforce them according to their plain meaning.

The cooperation clause in this case imposes upon insureds the duty to assist insurers in the conduct of suits and in enforcing any right to contribution or indemnity against persons potentially liable to insureds. Further, the policy provides that insurers are entitled to conduct any claim, in the name of insureds, for indemnity or damages against persons, and that insureds "shall give all such information and assistance as the insurers may reasonably require."

Here, the cooperation clause imposes a broad duty of cooperation and is without limitation or qualification. It represents the contractual obligations imposed upon and accepted by insureds at the time they entered into the agreement with insurers. In light of the plain language of the cooperation clause in particular, and language in the policy as a whole, it cannot seriously be contended that insureds would not be required to disclose contents of any communications they had with defense counsel representing them on a claim for which insurers had the ultimate duty to satisfy.

*Id.* at 327–28 (citations omitted); *see also EDO Corp. v. Newark Ins. Co.,* 145 F.R.D. 18, 23 (D. Conn. 1992).

Hydrite argues that *Waste Management* and its progeny have been strongly criticized. Hydrite notes that a number of courts have recognized that the standard cooperation clause was intended to facilitate cooperation in the defense of an underlying suit, not to benefit insurers in a coverage dispute. In primary support of its argument, Hydrite cites *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381 (D. Minn. 1992), which states:

> This court finds the reasoning of [*Waste Management*] to be fundamentally unsound. This court rejects the conclusion that because an insured agrees to cooperate with the insurance company, in the event he is sued or otherwise makes a claim under the policy, that the insured has thereby forever contractually waived the attorney-client privilege. To hold that an insurance policy creates a contractual waiver of the attorney-client privilege, even when the insurance company later sues the insured contending the insured's claim is not covered by the policy, would completely eviscerate the attorney-client privilege. Absent a showing that the parties intended the language of the cooperation clauses of the insurance policies at issue here to work a waiver of the attorney-client privilege, the court declines to follow the holding of *Waste Management* to find a contractual waiver of the privilege. Absent such an expressed intent, there is nothing about an insurance contract or the relationship between an insurance company and its insured which compels a court to ignore the express statutory language of Minnesota's attorney-client privilege.

*Id.* at 386. *See also Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 416–17 (D. Del. 1992); *Pittston*, 143 F.R.D. at 72; *North River Ins. Co. v.*

74

*Philadelphia Reinsurance Corp.*, 797 F. Supp. 363, 368–69 (D.N.J. 1992).

■■■

We agree with Hydrite that the broadly-worded cooperation clause does not supersede the attorney-client privilege or work product doctrine. The cooperation clause does not "imply a duty to produce documents protected by attorney-client privilege in coverage disputes." *Remington Arms*, 142 F.R.D. at 417. We do not interpret such a broadly worded clause to express any intention on the part of Hydrite to waive the attorney-client privilege or work product protection. *Cf. Pittston*, 143 F.R.D. at 72.

### *"Common interest" exception*

The insurers also contend that Hydrite's demand for defense, or payment for its defense expenses, creates a common interest between Hydrite and the insurance carriers with respect to Hydrite's ultimate liability for the contamination at the Cottage Grove site. The insurers argue that this common interest bars Hydrite's assertion of the attorney-client privilege and work product doctrine. The trial court rejected the insurers' common interest argument.

In *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 579 N.E.2d 322 (Ill. 1991), the court stated:

> Evidence scholars have variously stated that under the common interest doctrine, when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. This is especially so where an insured and his insurer initially have a common interest in defend-

ing an action against the former, and there is a possibility that those communications might play a role in a subsequent action between the insured and his insurer.

. . . .

In the typical case, where the common interest doctrine has been relied upon to defeat a claim of privilege, the attorney has provided joint or simultaneous representation of the parties. However, we believe that the doctrine may properly be applied where the attorney, though neither retained by nor in direct communication with the insurer, acts for the mutual benefit of both the insured and the insurer. It is the commonality of interests which creates the exception, not the conduct of the litigation.

*Id.* at 328–29 (citations omitted).

■

We reject the common interest exception to the attorney-client privilege as set forth in *Waste Management* because it is inconsistent with Wisconsin law. Section 905.03(4)(e), STATS., already sets forth a similar exception to the attorney-client privilege. This section provides that there is an exception to the attorney-client privilege "[a]s to a communication relevant to a matter of common interest between 2 or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between any of the clients." *See* § 905.03(4)(e).

■

In order for the § 905.03(4)(e), STATS., common interest exception to apply, the communication must be made "to a lawyer retained or consulted in common" by two or more clients. In contrast, the *Waste Management* common interest exception applies whenever an

attorney represents a common interest, regardless of whether the attorney was jointly retained by both parties. We follow § 905.03(4)(e), not *Waste Management*, and conclude that the common interest exception to the attorney-client privilege does not apply when the attorney was not retained or consulted in common by two or more clients.[5] Because Hydrite's attorneys were not retained or consulted in common by the insurers, the common interest exception does not apply.[6]

---

[5] *See also Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386–87 (D. Minn. 1992), which states:

> This court also finds unsound [*Waste Management's*] extension of the "common interest" exception to the attorney-client privilege. When an attorney acts for two different clients who each have a common interest, communications of either party to the attorney are not necessarily privileged in subsequent litigation between the two clients. The *Waste Management* opinion extends this doctrine to hold the attorney-client privilege unavailable to an insured even where the insured's attorney never represented the insurance company, and was not even retained by the insurance company to represent the insured. This reasoning is unsound. The rationale which supports the "common interest" exception to the attorney-client privilege simply doesn't apply if the attorney never represented the party seeking the allegedly privileged materials.

(Citation omitted.)

[6] We do not address whether Wisconsin law allows for a common interest exception to the work product doctrine. The parties' briefs focus mainly on whether the common interest exception pierces the attorney-client privilege, and we do not believe that the parties have sufficiently briefed the issue of whether the work product doctrine allows for a common interest exception. We generally do not develop the parties' arguments for them or consider issues that are inadequately briefed. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633, 642 (Ct. App. 1992).

*Application of exceptions to documents*

Hydrite does not challenge the trial court's decision regarding two documents to which the trial court concluded that the attorney-client privilege and work product doctrine had been pierced by the at issue doctrine and Hydrite's duty to cooperate. Therefore, we affirm the part of the trial court's order compelling Hydrite to disclose these documents.[7]

With regard to thirty-eight other documents, the trial court concluded that the attorney-client privilege and work product doctrine were pierced by the at issue doctrine and Hydrite's duty to cooperate.[8] With regard to six documents, the trial court concluded that the attorney-client privilege was pierced by the at issue doctrine and Hydrite's duty to cooperate.[9] Because Hydrite does not intend to use any of the privileged documents to prove a claim or defense and because the cooperation clause does not compel Hydrite to disclose privileged documents, we conclude that the trial court erroneously exercised its discretion in determining

---

[7] Bates numbers P10083-P10085 and P10090.

[8] Bates numbers P10654-P10675, P10463-P10466, P10921-P10926, P10933-P10936, P10982-P10992, P11061-P11064, P11082-P11088, P11089-P11101, P11153, P11176-P11207, P11244, P11353-P11364, P11375-P11376, P11411-P11412, P11430-P11435, P11436-P11449, P11916-P11917, P11939-P11942, P10113-P10165, P10170, P10171-P10173, P10180-P10184, P10188-P10192, P10229-P10230, P10238-P10295, P10316-P10317, P10590-P10593, P10611-P10624, P10705-P10709, P10711-P10713, P10714-P10739, P10740-P10762, P10111-P10112, P10323-P10334, P10498-P10517, P11945, P11953-P11961, and P12276-P12290.

[9] Bates numbers P10391, P10470, P10496, P11246-P11248, P11334-P11335, and P10598.

that the at issue doctrine and duty to cooperate pierced the attorney-client privilege. Because these forty-four documents are protected by the attorney-client privilege, we reverse the part of the trial court's order compelling Hydrite to disclose these documents.

With regard to one document, the trial court found that the work product protection had been pierced by the at issue doctrine and Hydrite's duty to cooperate.[10] Because the at issue doctrine recognized by the trial court is substantially equivalent to the requirements for the disclosure of work product contained in § 804.01(2), STATS., we conclude that the trial court properly exercised its discretion in ordering Hydrite to disclose this document. Accordingly, we affirm the part of the trial court's order compelling Hydrite to disclose this document.

With regard to six documents, the trial court did not determine the existence of the attorney-client privilege or work product protection, concluding that the attorney-client privilege, if any, and work product protection, if any, had been pierced by the at issue doctrine and Hydrite's duty to cooperate.[11] But the trial court erroneously concluded that the at issue doctrine and duty to cooperate pierced the attorney-client privilege. If these six documents are protected by the attorney-client privilege, they are protected from disclosure. We cannot determine whether these documents are protected by the attorney-client privilege for two reasons. First, we are a reviewing court, not a fact-finding court. *See Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 (1980). Second, the trial court's discovery determinations are discretionary, and we may

---

[10] Bates number P11068-P11072.

[11] Bates numbers P10497, P10810-P10814, P10820-P10825, P10826-P10831, P10832-P10835, and P11918-P11922.

not exercise the trial court's discretion. *See Wisconsin Ass'n of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 434–35, 293 N.W.2d 540, 545 (1980). Therefore, we reverse the part of the trial court's order compelling Hydrite to disclose these six documents and remand the matter so that the trial court may determine whether the attorney-client privilege or work product protection applies to these documents.

*By the Court.*—Order affirmed in part; reversed in part; and cause remanded with directions.